**UNITED STATES of America Plaintiff–Appellee,**

v.

**Fatima PEYTON, Defendant–Appellant.**

Nos. 00–50767, 01–50073.

D.C. Nos. CR–00–01478–TJW, CR–00–01478–1–RMB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001.

Decided Jan. 4, 2002.

Before B. FLETCHER, T.G. NELSON, and BERZON, Circuit Judges.

MEMORANDUM *

Fatima Peyton was charged and convicted of eight counts of using an unauthorized or counterfeit access device with intent to defraud under 18 U.S.C. § 1029. The district court imposed a sentence of fifteen months in prison. The charges stem from the fraudulent acquisition of American Express credit cards in the names of innocent third parties and from illegal purchases made using those cards. Peyton appeals, alleging a violation of her Fifth Amendment right to indictment by grand jury; charging error to the exclusion of some evidence and the inclusion of other evidence; and assigning error to the district court's refusal to grant her a minor role downward departure. The government cross-appeals, faulting the court's refusal to consider relevant conduct evidence and improper failure to group the evidence for

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

sentencing purposes. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §§ 3731 and 3742. Because the parties are familiar with the factual and procedural background, we do not detail it here. We affirm in part, reverse and vacate in part, and remand for resentencing.

## I.

### Variance From or Constructive Amendment of the Indictment

■ We review the question of whether there was a material variance or constructive amendment de novo. *United States v. Pisello*, 877 F.2d 762, 764, 765 (9th Cir. 1989). The indictment charged Peyton with misusing certain access devices. 18 U.S.C. § 1029 defines an "access device" as "any card, plate, code, account number, . . . or other means of account access . . .". The government charged Peyton not with misusing cards but rather with misusing specific account numbers, namely account numbers ending in 52007, 82000, and 02008. In attempting to prove the misuse of account numbers 52007 and 82000, the government presented evidence that Peyton had misused account numbers 51009 and 81000.

Prior to trial, Peyton requested a bill of particulars to clarify the evidence on which the government intended to rely. The district court denied her motion, leaving her confused as to why the evidence did not match the charges in the indictment. Further, the government provided nothing to Peyton during discovery that linked the American Express account numbers in evidence to the account numbers listed in the indictment. As a result, Peyton prepared her defense under the reasonable assumption that these other account numbers were separate American Express accounts held by the same person (e.g., a Platinum and a Gold card), and that the evidence related to these other account numbers was irrelevant to the crime charged. This assumption, which proved to be wrong, prejudiced her defense.

The mismatch was ultimately explained at trial by a government witness from American Express who testified that the company had changed the account numbers on two of the three accounts in response to signs of fraudulent activity. Still the evidence offered at trial proved facts different from those alleged in the indictment. The variance in proof was material, as it prejudiced the defense. *United States v. McCormick*, 72 F.3d 1404, 1408 (9th Cir.1995). Under these circumstances, Peyton's convictions on Counts One, Two, Four, Five, Six, and Eight, the counts charging the misuse of account numbers 52007 and 82000, must be vacated. A vacation of Peyton's conviction on these counts affects the amount of loss attributable to her. Therefore, resentencing as to the remaining counts, Three and Nine, is necessary. On remand, the district court may consider any matter relevant to the sentencing. *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995) (per curiam). Consequently, Peyton's appeal of the district court's refusal to grant a minor role downward departure and the government's cross-appeal on sentencing issues are rendered moot.

## II.

### 404(b) Evidence

■ At trial, the government introduced records, over Peyton's objection, of the transaction histories for credit cards that were issued in the names of five victims not listed in the indictment. Peyton charges that this evidence should have been excluded under Rule 404(b) as evidence of "other crimes, wrongs, or acts" introduced to prove her character and action in conformity therewith. FED.R.EVID. 404(b). A district court's evidentiary rulings during trial are reviewed for an abuse

of discretion. *United States v. Fleming*, 215 F.3d 930, 938 (9th Cir.2000).

This evidence was Rule 404(b) material and not evidence that was "inextricably intertwined" with the case. Evidence is "inextricably intertwined" if it "constitutes a part of the transaction that serves as the basis for the criminal charge," *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir.1995), or if it is "necessary to admit it in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 1012–13. Neither of these rationales applies to evidence related to the credit card records in question. These records recount the details of transactions that were wholly separable from the transactions that are the basis of the criminal charge. *Cf. United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993) (holding that offenses committed as part of a "single criminal episode" do not become other acts simply because the defendant is "indicted for less than all of his actions").

This 404(b) evidence was admissible because it was introduced to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). At closing argument, the government said of this evidence: "We have evidence that ... credit cards [belonging to the three people listed in the indictment] *as well as a numbers [sic] of others* were sent to a[ ] Sunset Lane address in San Ysidro. And each of the credit cards bore the names and the Social Security numbers of people who worked at the Defendant's place of employment...." This is not argument to prove character and action in conformity therewith, but instead evidence of plan, preparation, or opportunity. Thus, the evidence was properly admitted through the exception to Rule 404.

■ Finally, the district court did not abuse its discretion in concluding that the government had satisfied the notice requirement for introducing this 404(b) evidence. FED.R.EVID. 404(b). Peyton was apprised of the general nature of the evidence, in the form of names but not documentary records, well before trial. FED.R.EVID. 404(b) advisory committee's note, 1991 Amendment ("[O]pt[ing] for a generalized notice provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts."). Even though Peyton never saw the actual records until the first day of trial, the district court's continuance at that point helped prevent surprise and ambush. *Cf. United States v. Vega*, 188 F.3d 1150, 1152 (9th Cir.1999) ("Reasonable notice is designed to reduce surprise....").

Though this evidence was admissible under Rule 404(b), Peyton argues that it should have been excluded as unfairly prejudicial under Rule 403. FED.R.EVID. 403. The government used this evidence to show that the three cards did not come from co-workers at one post office facility by coincidence. Rather, a pattern was shown. Thus, the evidence was probative. Some prejudice was introduced, as the evidence could have increased the scale of Peyton's crime in the minds of the jurors. Nevertheless, the prejudice is only slightly more than the prejudice that would have occurred if the government had introduced evidence of the three cards only. As such, the resulting prejudice does not "substantially outweigh" the probative value. We affirm the district court's decision to allow the admission of this evidence.

### III.

### Exclusion of Lucas Statement

■ Peyton contends that her boyfriend, Lucas, and his brother obtained the names and social security numbers of the post office employees by stealing a page from a folder of records that she had

brought home from work, without her knowledge. The evidentiary centerpiece to support this theory is a sworn declaration signed by her boyfriend and co-defendant, Lucas. In the declaration, Lucas stated that Peyton had not supplied him with the names or social security numbers of the postal employees, did not possess or obtain credit cards in the postal employees' names, and did not conduct any transactions with the credit cards. This declaration was signed long after Lucas had been indicted, but twenty days before Lucas pled guilty to the charges against him.

Because Lucas was expected to invoke his Fifth Amendment right to self-incrimination at Peyton's trial, Peyton sought to introduce the declaration at trial under the statement against interest exception to the hearsay rule. Fed.R.Evid. 804(b)(3). To meet the 804(b)(3) exception, there must be corroborating circumstances clearly indicating the trustworthiness of the statement. *Id.* The district court held that the Lucas' declaration was "clearly untrustworthy in its entirety" and excluded the evidence.

While there were some indicia of trustworthiness, we conclude that the district court did not abuse its discretion in concluding that the declaration was not clearly trustworthy. The evidence suggested that Lucas wrote the declaration in an attempt to help Peyton, the mother of his child, save her job. Although the declaration was written before Lucas pled guilty, that circumstance does not provide the requisite indication of trustworthiness. He could well have decided to plead guilty at the time he signed the declaration, as the plea was a short time later.

IV.

Conclusion

We affirm the district court with respect to its evidentiary rulings on the 404(b) evidence and the Lucas declaration. How-

ever, we reverse the district court and vacate Peyton's convictions on Counts One, Two, Four, Five, Six, and Eight due to the material variance in proof for the misuse of account numbers 52007 and 82000. Her convictions on Counts Three and Nine stand, but, because the vacated convictions affected her sentence, resentencing is required.

AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED FOR RESENTENCING.